UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HELEN FARIAS,** | Civil Action Number: |
| Plaintiff, | 2:10-cv-03384 |
| v. | OPINION |
| **COMM'R OF SOCIAL SECURITY,** | HON. WILLIAM J. MARTINI |
| Defendant. | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Plaintiff Helen Farias appeals from a final determination by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. The claim was denied both initially and upon reconsideration. (Tr. 18.) Subsequently, on October 7, 2007, Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.*) The hearing took place on February 4, 2009, before ALJ Donna Krappa presiding in Newark, New Jersey. (*Id.*) On April 20, 2009, the ALJ denied Plaintiff's application. (Tr. 28.) On April 30, 2010 the Appeals Council denied Plaintiff's appeal. Thereafter, on July 2, 2011, Plaintiff filed her complaint and brief in this Court. For the reasons elaborated below, the Appeals Council's decision will be affirmed.

### II.  STANDARD OF REVIEW AND ANALYSIS AT THE ADMINISTRATIVE LEVEL

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* at §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." *Id.* at §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires in Step Three as to whether the impairment or

1

impairments meet or equal the criteria of any impairment found in the C.F.R.'s *Listing of Impairments*. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is deemed disabled *per se* and the inquiry ends; if not, the ALJ moves on to Step Four. *Id.* at §§ 404.1520(d), 416.920(d). In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* at §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

The Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review. *See Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). The district court reviews the ALJ's application of the law *de novo*; factual findings are reviewed to determine whether they are supported by substantial evidence in the record.

## III.   FACTS

Plaintiff is a forty-five year old female. On December 20, 2006, Plaintiff filed an application for supplemental security income, alleging that she suffered from severe anxiety and panic attacks since December 1, 1987. At the administrative hearing, Plaintiff presented the medical diagnoses of her treating psychiatrist (Dr. Arroyo), an examining psychiatrist (Dr. Solomon Miskin), and an examining internist (Dr. Sivadas). In a letter dated November 25, 2008, Plaintiff's treating psychiatrist, Dr. Arroyo, wrote that Plaintiff had a "history of both a mood and anxiety disorder, specifically, bipolar disorder, generalized anxiety disorder, and social anxiety disorder." (Tr. 327.) Additionally, in his treatment records, Dr. Arroyo diagnosed Plaintiff as suffering from "recurrent major depressive disorder," "social anxiety disorder," and "generalized anxiety disorder." (Tr. 239.) However, it appears that the conclusion Dr. Arroyo reached in his letter is not supported by his treatment notes. For example, in his treatment notes Dr. Arroyo stated that Plaintiff did not suffer from bipolar disorder. (*Id.*) Likewise, Dr. Arroyo's notes reflect that he repeatedly stated that Plaintiff's impairments were mild to moderate, as opposed to severe. Dr. Miskin, the examining government psychiatrist, diagnosed Plaintiff as suffering from "panic disorder with agoraphobia, chronic, severe." (Tr. 242.) Dr. Miskin also diagnosed Plaintiff as suffering from "bipolar disorder, mixed, without psychotic features." (*Id.*) Lastly, Plaintiff presented the diagnosis of Dr. Sivadas, an examining internist, who stated that Plaintiff suffered from "[h]ypertension controlled with medication." (Tr. 246.)

The ALJ found that Plaintiff suffered from a single severe impairment: affective disorder. The ALJ also found that none of the other purported impairments, such as hypertension, were severe. At Step Three, the ALJ concluded that Plaintiff's single mental impairment

did not meet or equal the criteria of listing 12.04. The ALJ noted that Dr. Arroyo's own progress notes did not support Dr. Arroyo's conclusion that Plaintiff suffered from severe psychological impairments. In his notes, Dr. Arroyo never diagnosed Plaintiff's impairments as exceeding either mild or moderate. Additionally, the ALJ found that Plaintiff's testimony regarding the severity of her symptoms was not credible. (Tr. 26.) The ALJ noted that Plaintiff had no difficulty concentrating or thinking, and had no memory problems. (Tr. 26.) The ALJ ascribed Plaintiff's depression and anxiety to various life issues, including financial problems, her ex-husband's behavior, and raising a teenage daughter by herself. (Tr. 25.) The ALJ also discounted Dr. Miskin's diagnosis because it was based on Dr. Miskin's one-time evaluation of Plaintiff. (Tr. 26.) Finally, Dr. Miskin's single evaluation was not supported by his medical source statement. Lastly, the ALJ noted that Dr. Sivadas' report did not deal with affective disorder. Instead, it dealt with hypertension which was controlled by medication. Moreover, Dr. Sivadas described the other claimed symptoms and disorders as within normal bounds. (Tr. 21.)

## IV.   ANALYSIS

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and must either be reversed or remanded. Specifically, Plaintiff contends that the ALJ improperly substituted her own judgment in place of the medical evidence, including that of Dr. Arroyo, Plaintiff's treating physician. It is well established that "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, an ALJ must give controlling weight to a treating physician's opinion only when the opinion is consistent and well-supported by the evidence in the record. *Becker v. Comm'r of the Soc. Sec.*, 2010 U.S. App. LEXIS 25481, at *18 (3d Cir. Dec. 14, 2010). Furthermore, when a treating physician's opinion conflicts with a non-treating, non-examining physician, an ALJ may choose to reject the treating physician's opinion if the ALJ bases his conclusion on the contradictory medical evidence. *Id.* Although an ALJ may reject a treating physician's testimony in favor of a non-treating physician, he must have a reason or supply a ground for his decision, without which meaningful judicial review is not possible. *Orriols v. Comm'r of Soc. Sec.*, 228 Fed. App'x 219, 224 (3d Cir. 2007); *see also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (stating that "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests").

Here, the ALJ rejected Dr. Arroyo's conclusion that Plaintiff was severely mentally impaired because Dr. Arroyo's conclusion was not supported by his own treatment records. Those records consistently indicate that Plaintiff's mental limitations were only mild to moderate. Additionally, Dr. Arroyo's letter contradicted his treatment progress notes. In his letter, Dr. Arroyo stated that Plaintiff suffered from bipolar disorder, while in his progress notes Dr. Arroyo clearly stated that Plaintiff did not suffer from bipolar

disorder. Furthermore, the ALJ stated that while Dr. Sivadas diagnosed Plaintiff as suffering from hypertension, Plaintiff offered no evidence tending to establish that this disorder met or equaled the appropriate listing under the C.F.R.'s *Listing of Impairments*. Moreover, the ALJ noted that Dr. Sivadas' treatment records show that Plaintiff's hypertension was "controlled" with medication. (Tr. 21, 246.) In her Opinion, the ALJ also alluded to the fact that three State agency medical consultants, Drs. Bansil, Briski, and Goldbas, upon reviewing Plaintiff's medical records, concluded that Plaintiff's impairment did not meet or equal the listing.[1] (Tr. 26, 249-62, 267, 315.) Based on the weaknesses of the supporting documentation put forth from Dr. Arroyo, it appears that the ALJ was justified in rejecting Dr. Arroyo's conclusion embodied in his letter in favor of the analysis put forward by the three government doctors.

With regard to Dr. Miskin's report, although he concluded by stating that Plaintiff suffered from "panic disorder, with agoraphobia, chronic, severe," (Tr. 242) the ALJ found that the medical evidence presented by Dr. Miskin did not support a finding that Plaintiff's mental impairment met or equaled the criteria of the listing. It is well established that an ALJ may afford a treating physician's opinion, and surely also an examining physician's opinion such as Dr. Miskin, less weight in circumstances where the supporting evidence does not support the doctor's conclusion. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The ALJ discounted Dr. Miskin's conclusion because, in Dr. Miskin's medical source statement, he merely stated that Plaintiff suffered from "a *poor* ability to understand, carry out, and remember instructions and a *poor* ability to respond appropriately to supervision, coworkers and tolerate work pressures in a work setting. Adaptability and stress tolerance are limited to *poor*." (*Id.*) Additionally, the ALJ noted that Dr. Miskin's conclusion should not carry much weight because it "was based upon a one-time evaluation and was not based upon longitudinal treatment." (*Id.*) The ALJ found that Plaintiff was capable of performing the basic mental demands of unskilled work.[2] The ALJ reached this conclusion because Plaintiff's medical records and her testimony at her hearing before the ALJ established that Plaintiff was oriented, that her memory was intact, that there was no evidence of thought disorder, suicidal or homicidal ideation, nor any evidence of hallucinations or delusions. The records and her

---

[1] It must be noted, however, that it appears that these doctors did not actually see or treat Plaintiff and that they merely reviewed the dry medical record.

[2] In Point VI of Plaintiff's Brief, Plaintiff argues that the ALJ failed to evaluate Plaintiff's mental impairment and resulting functional limitations as required by 20 C.F.R. § 404.1520A. As explained above, the ALJ's determination was based on the substantial evidence in the record before her. Whether or not the ALJ complied with a specific procedure would only be a factor were it to cause an error in the ALJ's decision. Even assuming that the ALJ failed to follow the mandated procedure, Plaintiff has made no argument that the error was anything other than harmless. *Johannemann v. Comm'r of Social Sec.*, 2010 WL 1838330, at *3 (D.N.J. May 6, 2010) (applying harmless error standard).

testimony before the ALJ further indicated that Plaintiff did not have any problems with alertness, attention span, distractibility, short-term or long-term memory, decision making or impulsivity.  The ALJ concluded that Plaintiff had no problems with obsessions, compulsions, phobias (this would indicate agoraphobia), or depersonalization.  Plaintiff was found to be capable of holding conversations, and she exhibited both fair insight and good eye contact. (Tr. 25.)  Moreover, Plaintiff indicated in her functioning report that she was able to take care of her personal needs, such as cooking, doing laundry, and performing general household chores. (Tr. 26.)  Plaintiff also acknowledged that she was capable of going to church, visiting her mother, shopping in stores, and using public transportation.  (*Id.*)

In sum, the ALJ considered all the substantial evidence in the record and found that Plaintiff failed to establish that she suffered from a mental impairment that met or equaled the criteria in the listing.

## V.    CONCLUSION

For the reasons elaborated above, the administrative decision below is **AFFIRMED**.  An appropriate order accompanies this opinion.  This terminates this action.

                                                                  s/ William J. Martini  
**DATE: May 19, 2011**                              **William J. Martini, U.S.D.J.**